UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 22 C 3639 |
| CHICAGO BASEBALL HOLDINGS, LLC, WRIGLEY FIELD HOLDINGS, LLC, WF MASTER TENANT, LLC, and CHICAGO CUBS BASEBALL CLUB, LLC, | ) ) **Jury Trial Demanded** ) ) ) |
| Defendants. | ) |

**COMPLAINT**

The United States of America, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, alleges as follows:

**Introduction**

1. This is a disability rights enforcement action by the United States against the owners and operators of the Wrigley Field facility—Chicago Baseball Holdings, LLC, Wrigley Field Holdings, LLC, WF Master Tenant, LLC, and Chicago Cubs Baseball Club, LLC (referred to collectively in this complaint as "the Cubs")—based on their failure to ensure that recent additions and alterations at Wrigley Field are readily accessible to and usable by individuals with disabilities, as required by Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-89, as well as Title III's implementing regulation, 28 C.F.R. Part 36, and that the facility is otherwise operated in compliance with the ADA. The United States seeks declaratory, injunctive, and monetary relief to remedy these violations of the ADA.

2. As discussed further below, the Cubs recently completed a multi-year renovation, rehabilitation, expansion, and reconstruction of Wrigley Field known as "the 1060 Project" (after

Wrigley Field's West Addison Street address). Although this project significantly enhanced the gameday experience for many fans, particularly those able to take advantage of premium clubs and other luxury accommodations, the same cannot be said for fans with disabilities. To the contrary, and throughout the 1060 Project, the Cubs removed the best wheelchair seating in the stadium, failed to incorporate wheelchair seating into new premium clubs and group seating areas, designed and constructed wheelchair seating in the last row of general admission areas that does not meet the requirements of the ADA Standards for Accessible Design, and failed to remove architectural barriers to access in unaltered portions of Wrigley Field where it was readily achievable to do so. This all occurred even though the Cubs rebuilt much of Wrigley Field as part of the 1060 Project and thus had ample opportunity and a significant ADA obligation to incorporate wheelchair seating and other accessible elements into and throughout the new and improved facility.

## Jurisdiction and Venue

3. The court has subject matter jurisdiction over this ADA action under 28 U.S.C. §§ 1331 and 1345.

4. The court may grant the relief requested in this action under 42 U.S.C. § 12188(b)(2), as well as 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the defendants reside in this district, the acts and omissions occurred in this district, and the property that is the subject of the action (Wrigley Field) is located in this district as well.

## Parties

6. The plaintiff is the United States of America. The United States, through the Department of Justice, is authorized to enforce the ADA under 42 U.S.C. § 12188(b)(1)(B).

2

7. Defendant Wrigley Field Holdings, LLC is a limited liability company that owns Wrigley Field.

8. Defendant WF Master Tenant, LLC is a limited liability company that leases Wrigley Field from Wrigley Field Holdings, LLC.

9. Defendant Chicago Cubs Baseball Club, LLC is a limited liability company that subleases Wrigley Field from WF Master Tenant, LLC.

10. Defendant Chicago Baseball Holdings, LLC is a limited liability company that owns Chicago Cubs Baseball Club, LLC, Wrigley Field Holdings, LLC, and WF Master Tenant LLC (through its parent company).

11. All four defendants are covered entities for purposes of Title III of the ADA because they own, operate, and/or lease Wrigley Field, a place of public accommodation, and they designed and constructed and made alterations to the Wrigley Field facility in connection with the 1060 Project. 42 U.S.C. §§ 12182(a), 12183; 28 C.F.R §§ 36.201(a), Subpart D.

12. Wrigley Field is a place of public accommodation within the meaning of Title III because its operations affect commerce and it is a "stadium, or other place of exhibition or entertainment," as well as a "place of public gathering." 42 U.S.C. § 12181(7)(C), (D); 28 C.F.R. § 36.104.

**Factual Background**

**I. The 1060 Project**

13. Wrigley Field is a Major League Baseball stadium on the north side of Chicago. Originally opened in 1914, it has been the home of the Cubs since 1916 and is the second-oldest ballpark in the major leagues (behind Fenway Park in Boston).

14. As currently constituted, Wrigley Field is divided into three general seating areas:

(1) the bleachers (located in the outfield in the so-called 500 level), (2) the lower grandstand (located behind home plate and down the first and third base lines in the 10, 100, and 200 levels), and (3) the upper deck (located directly above the lower grandstand in the 300 and 400 levels). A map showing these seating areas is attached as Exhibit A.

15. Beginning after the 2014 season, the Cubs embarked on what they have described as a "long-awaited restoration and expansion of Wrigley Field," intended "to ensure the viability of the ballpark for future generations of Cubs fans, while preserving the beauty, charm and historic features fans have come to know and love."[1] This 1060 Project involved the expenditure of hundreds of millions of dollars to repair and reinforce Wrigley Field's structural supports, add new player facilities, enhance fan amenities, and expand seating options in the bleachers and the grandstand. The changes made to the facility in connection with the 1060 Project were subject to the ADA's requirements for design, construction, and alterations. 42 U.S.C. § 12183(a)(1)-(2); 28 C.F.R. Part 36, Subpart D.

16. A key component of the 1060 Project was the addition of porches and group seating areas in the left and right field bleachers (the "LG Porch" and "Hornitos Hacienda" in left field and the "Right Field Porch" and the "Budweiser Patio" in right field), as well as four new premium clubs (reserved, premium areas) in the grandstand: the "American Airlines 1914 Club" (located behind home plate in the lower grandstand), the "Maker's Mark Barrel Room" (located down the first base line in the lower grandstand), the "W Club" (located down the third base line in the lower grandstand), and the "Catalina Club" (located behind home plate and below the press box in the upper deck).

---

[1] 1060 Project, https://www.mlb.com/cubs/ballpark/1060-project/vision/overview.

17. A map showing the locations of new premium clubs and group seating areas is attached as Exhibit B. The four premium clubs in the grandstand offer indoor restaurants, bars, and other amenities, as well as outdoor club seating for purposes of watching the game.

18. To facilitate these extensive additions, the Cubs rebuilt a sizable portion of the pre-existing Wrigley Field facility. In particular, the Cubs demolished and then reconstructed the left and right field bleachers shortly after the project began. Below are photographs showing the outfield bleachers *during* and *after* construction:


Outfield bleachers during construction


Outfield bleachers after construction

5

19. The Cubs also tore most of the lower grandstand down to the dirt before rebuilding that area of the stadium as well. Below are photographs showing the lower grandstand *during* and *after* construction:


During construction behind home plate


During construction down first and third base lines


Lower grandstand after construction

## II. Reduced Accessibility at Wrigley Field

20. The 1060 Project has had a significant adverse impact on individuals with disabilities and their ability to access Wrigley Field. As discussed further below, this reduced accessibility at the stadium relates both to wheelchair seating and non-seating elements.

### A. Wheelchair Seating

21. Wrigley Field currently has wheelchair seating in its three general seating areas: (1) the bleachers, (2) the lower grandstand (consisting, front to back, of the "club," "field," and "terrace" sections), and (3) the upper deck. A map showing the locations of current and planned wheelchair seats at Wrigley Field is attached as Exhibit C (the yellow circles identify the wheelchair seats that the Cubs say they plan to add in the future). In this context, a wheelchair seat is a space for a wheelchair, as well as a seat (typically a folding chair) for one companion.

#### 1. Bleachers

22. As indicated in Exhibit C, general admission wheelchair seats are currently found in four locations in the bleachers. Many of these wheelchair seats are located in the last row of the bleachers on newly constructed porches (the LG Porch and the Right Field Porch), rather than on the main bleacher concourse level, which is farther forward and closer to the field.

23. This was not the case before the 1060 Project. Wrigley Field previously had 15 general admission wheelchair seats with excellent, unobstructed views over standing spectators on the main bleacher concourse in right field, but the Cubs eliminated those wheelchair seats during the 1060 Project by converting that space into the Budweiser Patio, a group seating area. Wheelchair users can sit inside the Budweiser Patio, but only if they are part of a group that has rented the space. Group seating is typically more expensive per person than general admission seating, mainly because food and drinks are included in the ticket price.

24. As currently constructed, therefore, the only general admission wheelchair seats on the main bleacher concourse are three seats in Sec. 501 in the corner of left field, and 16 seats in the "Batter's Eye" area in center field. But Sec. 501 is sometimes used for television cameras, rather than wheelchair seating, or as standing room for other fans, as shown below.





25. Additionally, the Batter's Eye area (shown below) is covered by a mesh tarp, has tinted glass, is segregated from other bleacher fans, often gets abnormally hot in the summer, and has been the subject of numerous complaints from wheelchair users.



26. The Cubs' decision to cluster wheelchair seats on the porches not only isolates wheelchair users from other fans and confines them to the worst seats in the bleachers—it also

inhibits their ability to watch the game. This is because the wheelchair seats on the porches were not constructed to provide lines of sight to the field over standing spectators. Instead, these wheelchair seats rely on a policy (supposedly enforced by ushers) that discourages but does not preclude bleacher fans from sitting and standing in the two rows immediately in front of the wheelchair spaces (essentially, the two rows are roped off, but the seats remain, so ambulatory spectators can move into the area and block wheelchair users' views). There are also instances of drink rails on the porches that impede wheelchair users' ability to see the field.

27. The newly constructed Hornitos Hacienda group seating area in left field does not have any wheelchair seats or an accessible route allowing wheelchair users to reach the space. An older club constructed in 2005, the "Fannie May Bleacher Sweet" in center field, does not have an accessible route either.

### 2. Lower Grandstand

28. The lower grandstand area of the stadium contains no wheelchair seats located closer to the field than the "cross-aisle" between the 100 and 200 levels. The cross-aisle runs horizontally from foul pole to foul pole and is about halfway between the front row and the last row in the lower grandstand. (The cross-aisle is shown in the bottom photo in paragraph 19, above. There are two horizonal aisles shown; the cross aisle is the one farther from the field, just below the upper deck.)

29. The Cubs decided not to put wheelchair seating closer to the field than the cross-aisle despite adding the 1914 Club, the Maker's Mark Barrel Room, and the W Club as part of the 1060 Project, meaning that wheelchair users do not have access to these club areas.

30. Indeed, ambulatory members of the 1914 Club are able to watch the game from club seating located in the first seven rows directly behind home plate. Ambulatory members of

the Maker's Mark Barrel Room and the W Club similarly have access to front-row and other club seating located close to the field down the first and third base lines (the first seven rows for the Maker's Mark Barrel Room, and the first twelve rows for the W Club).

31. By contrast, club members who use wheelchairs do not have access to any of this seating. Although wheelchair users are able to access the indoor restaurants and bars associated with these three lower grandstand clubs (which are located underneath the seating bowl), they can only watch the game on the cross-aisle between the 100 and 200 levels of the grandstand. This wheelchair seating is located far behind the club seating available to ambulatory members of each of these clubs (about 20 rows behind the last row of club seating). The wheelchair seating for the Maker's Mark Barrel Room is also farther down the first base line than the club seating available to ambulatory fans.

32. Over half of the total wheelchair seats in the lower grandstand are located behind the very last row of the terrace area (the 200 level)—in other words, the last row of the entire lower deck. These seats are located underneath the upper deck, have obstructed views (due to beams supporting the upper deck), and are the worst seats in the entire grandstand (about 50 rows from the field). Fly balls disappear from view from this vantage point, and the outfield scoreboard is often obscured, as can be gleaned from the next two photographs:

 

33. Additionally, the 63 wheelchair seats located on the cross-aisle between the 100 and 200 levels do not have adequate sightlines over standing spectators. Although an ambulatory fan can see almost all of the infield over other standing patrons, a wheelchair user can barely see any of the infield when spectators stand up—often during the most exciting parts of the game. Below is a photograph taken from a wheelchair in this location:



    **3.    Upper Deck**

34. With respect to the upper deck, most if not all of the existing or planned wheelchair seats lack adequate sightlines over standing spectators. The sightlines are better than in the lower grandstand—because the pitch of the seats is steeper in the upper deck—but are still not comparable to the views enjoyed by ambulatory fans.

35. Additionally, while the existing or planned wheelchair seating is dispersed around the upper deck to a degree, proportional wheelchair seating options near the press box (behind home plate in the most-desirable area) are lacking.

36. This is a stark contrast to the wheelchair seating options in the upper deck prior to the 1060 Project. Similar to the Cubs' approach to the Budweiser Patio in the bleachers, Wrigley Field previously had 19 general admission wheelchair seats underneath the press box and directly behind home plate, but the Cubs eliminated these wheelchair seats to make room for the Catalina

Club and moved them down the first and third base lines.

  **B.**  **Non-Seating Elements**

  37.  In addition to the elements discussed above, there are a number of other accessibility issues at Wrigley Field unrelated to wheelchair seating.

  38.  For example, counter surfaces throughout the stadium are too high for wheelchair users, including ticket windows, concession stands, and condiment stations.

  39.  Additionally, Wrigley Field has protruding objects along circulation paths that impede individuals who are blind or have low vision, as well as restrooms ("toilet rooms" in ADA parlance) with inaccessible elements (*e.g.*, paper towel dispensers that are too high and out of reach for wheelchair users).

  40.  Moreover, at least one of the parking lots used by the Cubs has gaps, vertical changes, loose surface materials, and excessive cross slopes that are extremely difficult for wheelchair users and others to traverse, and most of the vehicles that transport patrons from parking lots to the stadium are not accessible.

  41.  Certain of the drop-off points for shuttle service are also obstructed by curbs and jersey barriers, impeding wheelchair users' ability to exit shuttles and safely enter the stadium.

## ADA Violations at Wrigley Field

**I.**  **ADA Requirements**

  42.  Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and to provide "strong, consistent, [and] enforceable standards addressing" such discrimination. 42 U.S.C. § 12101(b)(1), (2).

  43.  Title III of the ADA prohibits discrimination "on the basis of disability in the full

12

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

44. Discrimination includes a failure to design or construct facilities, or make alterations to the maximum extent feasible, that are "readily accessible to and usable by individuals with disabilities . . . in accordance with standards set forth or incorporated by reference in regulations" issued under Title III. 42 U.S.C. § 12183(a)(1)-(2).

45. Regulations promulgated by the Attorney General detail how places of public accommodation and commercial facilities are "to be designed, constructed, and altered in compliance with the accessibility standards" set out in the regulations. 28 C.F.R. § 36.101(a).

46. The ADA Standards for Accessible Design, comprising both the 1991 Standards and 2010 Standards, set out the relevant accessibility standards for evaluating compliance with the statute and regulation. *See* 42 U.S.C. §§ 12183, 12186; 28 C.F.R. §§ 36.102, 36.304(d), and Subpart D. Additions and alterations to the Wrigley Field facility in connection with the 1060 Project are governed by the 2010 Standards because they were made after March 15, 2012. *See* 28 C.F.R. § 36.406(a)(3). The 2010 Standards require Wrigley Field to have 201 general admission wheelchair seats (it has 37,953 total general admission seats), which must be dispersed vertically and horizontally throughout the stadium. 2010 Standards §§ 221.2.1.1, 221.2.3.1, 221.2.3.2; 28 C.F.R. § 36.406(f).

47. Wrigley Field is also required to have additional wheelchair seating for luxury boxes, club boxes, and suites, which are common use areas for purposes of the ADA. *See* 2010 Standards § 106.5 (defining "common use" as "[i]nterior or exterior circulation paths, rooms, spaces, or elements that are not for public use and are made available for the shared use of two or more people"). This obligation includes having eight wheelchair seats for the 1914 Club, five

13

wheelchair seats each for the W Club and Maker's Mark Barrel Room, and six wheelchair seats for the Catalina Club. Advisory Comment to 2010 Standards § 221.2.1.2. These wheelchair seats must be located *within* the club areas and be served by an accessible route. 2010 Standards §§ 221.2.1.2, 206.2.4.

48.     All wheelchair seats must have compliant lines of sight to the field and provide seating locations and viewing angles that are substantially equivalent to, or better than, those available to all other spectators. 2010 Standards §§ 221.2.3, 802.2.2. Wheelchair seats also must be integrated into the seating plan so that wheelchair users are not isolated from other spectators, let alone from their family and friends. 2010 Standards § 221.2.2.

49.     Although alterations to existing facilities are permitted consistent with the requirements discussed above, the ADA prohibits an alteration that has the effect of decreasing the accessibility of a facility below the requirements for new construction at the time of the alteration. 2010 Standards § 202.3.1.

50.     With respect to the portions of Wrigley Field that were not expanded or altered by the 1060 Project, the ADA nevertheless requires an existing facility to remove architectural barriers "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a). "Readily achievable" means easily accomplished "without much difficulty or expense." 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304(a).

## II.     ADA Noncompliance

51.     For all of the reasons discussed above, there are ADA violations at Wrigley Field relating both to wheelchair seating and non-seating elements.

52.     With respect to wheelchair seating in the bleachers, none of the wheelchair seats currently designated by the Cubs in that area comply with the ADA. Among other deficiencies,

almost all of the wheelchair seats are located on the porches (at the rear of the bleachers) or in the segregated, unsuitable Batter's Eye area, rather than on the main bleacher concourse level, which violates the ADA's vertical dispersion and integration mandates. 2010 Standards §§ 221.2.2, 221.2.3.2.

53. Although general admission wheelchair seating was previously available on the main bleacher concourse in the right field bleachers, that area was converted to group seating for the Budweiser Patio, reducing the overall accessibility of the bleachers and the facility as a whole. 2010 Standards § 202.3.1.

54. Additionally, the wheelchair seats on the porches are noncompliant because they were not constructed to provide wheelchair users with lines of sight over standing spectators and rely instead on a roping policy that is easy to evade and raises the risk of discrimination. 2010 Standards §§ 202.2, 202.3, 221.2.3, 802.2.2; *see also* 28 C.F.R. §§ 36.401(a)(1), 36.402.

55. Clubs and group seating areas in the bleachers are also deficient. For example, Hornitos Hacienda and the Fannie May Bleacher Sweet have no accessible route to the group seating area, and Hornitos Hacienda does not have any wheelchair seating. 2010 Standards §§ 221.2.1.2, 206.2.4. The designated wheelchair seating for the LG Porch is noncompliant for the same reasons the general admission wheelchair seating on the bleacher porches is noncompliant: sightlines over standing spectators impermissibly rely on policies rather than architecture. 2010 Standards §§ 202.2, 202.3, 221.2.3, 802.2.2; *see also* 28 C.F.R. §§ 36.401(a)(1), 36.402.

56. In the lower grandstand, most of the wheelchair seats currently designated by the Cubs are noncompliant because they violate dispersion and integration requirements and/or because they do not have adequate sightlines over standing spectators. 2010 Standards §§ 221.2.2,

15

221.2.3, 802.2.2.

57. The grandstand contains no wheelchair seats or accessible routes closer to the field than the cross-aisle between the 100 and 200 levels (even to account for the newly added premium clubs). So the closest that wheelchair seats are found in the lower grandstand is about halfway between the first and last rows, with over half of the total wheelchair seats in the lower grandstand located behind the very last row of the grandstand and with obstructed views. 2010 Standards §§ 221.2.1.1, 221.2.2, 221.2.3.2. Further, the wheelchair seats located on the cross-aisle between the 100 and 200 level do not have adequate sightlines over standing spectators. 2010 Standards §§ 221.2.3, 802.2.2.

58. With respect to other accessible seating in the grandstand more generally, Wrigley Field lacks sufficient ADA-required aisle seats with folding or retractable armrests. 2010 Standards §§ 221.4, 802.4.1, 802.4.2 (5% of all aisle seats must have these accessible elements). Based on approximately 3,734 seats currently existing along grandstand aisles, Wrigley Field is required to have 187 proportionately distributed aisle seats to assist individuals who may not require a wheelchair seat and are able to ambulate to an aisle seat. Currently, however, there are only 44 compliant aisle seats in the grandstand as a whole.

59. In the upper deck, most (if not all) of the existing or planned wheelchair seats lack adequate sightlines over standing spectators. 2010 Standards §§ 221.2.3, 802.2.2. Although portions of the upper deck located down the first and third base lines were not altered as part of the 1060 Project, correcting these sightlines falls within the Cubs' barrier-removal obligations. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).

60. Additionally, the upper deck lacks proportional wheelchair seating options near the press box, which violates horizontal dispersion requirements. 2010 Standards § 221.2.3.1; 28

C.F.R. § 36.406(f)(2). This deficiency stems from the Cubs' decision to remove 19 general admission wheelchair seats underneath the press box and directly behind home plate to make room for the Catalina Club—a decision that reduced the accessibility of the upper deck and the stadium as a whole. 2010 Standards § 202.3.1. Notably, the Catalina Club does not even have enough wheelchair seats (it is required to have six wheelchair seats but currently only has two). 2010 Standards § 221.2.1.2.

61. There are also ADA violations in the press box and private suites. For example, the press box, even though not generally accessible by the public, is a common use area required to have four wheelchair seats, but it only has two, and those seats do not meet the required dimensions under the ADA. 2010 Standards §§ 226.1, 902, 305, 306. Additionally, the procedure for accommodating a wheelchair in a suite (which involves removing a drink rail, typically after the guest using a wheelchair arrives) is time consuming and subjects wheelchair users to the risk of unwanted attention and embarrassment. 28 C.F.R. § 36.302(a).

62. Lastly, the non-seating elements discussed above relating to inaccessible counters, dining surfaces, toilet rooms, circulation paths, and parking and shuttle service are detailed in Exhibit D, which also contains citations to the applicable ADA Standards and/or regulations.

63. In addition to these issues, the lower grandstand clubs have inaccessible routes from the main concourse into the clubs, including noncompliant running slopes, landings, and handrail extensions on the route into the W Club, and no unescorted, independently usable accessible route directly into the Maker's Mark Barrel Room (wheelchair users must utilize a circuitous route that goes through the 1914 Club and back-of-the-house areas to reach the Maker's Mark Barrel Room). 2010 Standards §§ 206.2.4, 206.3, 402.2, 405.2, 405.7.3, 405.8, 505.10.1.

64. There are also viewing panels in the W Club and the Maker's Mark Barrel Room

17

that allow fans to see into the batting cages that are located underneath the seating bowl and down the first and third base lines (the home batting cage is down the third base line, while the away batting cage is down the first base line). Wheelchair users cannot see inside these batting cages because the viewing panels are too high. 28 C.F.R. § 36.302(a); 2010 Standards § 221.2.3.

65. Wheelchair users also face obstructed views of the field from inside the Catalina Club due to windowsill height, and from the Fannie May Bleacher Sweet due to the height of bushes in center field designed to give batters a dark visual background. 28 C.F.R. § 36.302(a); 2010 Standards § 221.2.3.

## Claim for Relief: Violations of Title III of the Americans with Disabilities Act

66. The United States incorporates paragraphs 1-65 of its complaint as if fully set forth herein.

67. For the foregoing reasons, the Cubs have denied individuals with disabilities the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Wrigley Field facility, a place of public accommodation.

68. The Cubs have further failed to design and construct and make alterations to the Wrigley Field facility that are readily accessible to and usable by individuals with disabilities, as required by the ADA, and to ensure that individuals with disabilities are otherwise not subjected to discrimination on the basis of disability at Wrigley Field.

69. As a result, the Cubs are in violation of Title III of the ADA and its implementing regulation.

70. The United States demands a jury trial on all issues so triable.

**Prayer for Relief**

WHEREFORE, the United States prays that the court grant the following relief:

A. Enter judgment in favor of the United States and declare that defendants Chicago Baseball Holdings, LLC, Wrigley Field Holdings, LLC, WF Master Tenant, LLC, and Chicago Cubs Baseball Club, LLC have violated Title III of the ADA, as amended, 42 U.S.C. §§ 12181-89, and Title III's implementing regulation, 28 C.F.R. Part 36;

B. Enter an injunction requiring the defendants to remedy the deficiencies described above;

C. Award compensatory damages in an appropriate amount for injuries suffered as a result of the defendants' noncompliance with the ADA;

D. Impose civil penalties commensurate with the violations described above; and

E. Award such other relief as the court deems appropriate.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Abraham J. Souza
 PATRICK W. JOHNSON
 ABRAHAM J. SOUZA
 Assistant United States Attorneys
 219 South Dearborn Street
 Chicago, Illinois 60604
 Phone: (312) 353-5327
 (312) 353-1857
 Email: patrick.johnson2@usdoj.gov
 abraham.souza@usdoj.gov