IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-03639 |
| | ) | |
| | ) | Judge Martha Pacold |
| CHICAGO BASEBALL HOLDINGS, LLC; | ) | Magistrate Judge Heather McShain |
| WRIGLEY FIELD HOLDINGS, LLC; | ) | |
| MASTER TENANT, LLC; and | ) | |
| CHICAGO BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**CITY OF CHICAGO'S (I) OPPOSITION TO DEFENDANT CHICAGO CUBS' MOTION TO COMPEL PROUDCTION OF DOCUMENTS AND (II) MOTION FOR ORDER QUASHING SUBPOENA**

Pursuant to Fed. R. Civ. Pro. 45(d)(3), third-party subpoena recipient the City of Chicago (the "City") respectfully submits its (i) Opposition to Defendants Chicago Baseball Holdings, LLC, Wrigley Field Holdings, LLC, Master Tenant, LLC, and Chicago Baseball Club, LLC ("Chicago Cubs" or "Defendant") Motion to Compel Production of Documents From the City of Chicago ("Motion"), and (ii) the City's own Motion seeking an order quashing the Subpoena. In support, the City respectfully states as follows:

**INTRODUCTION**

This case is about whether Defendant adequately complied with Title III of the ADA and its implementing regulations issued by the United States Department of Justice ("DOJ") during renovation work associated with Project 1060 at Wrigley Field. The City is not a party to the case, and no City laws are at issue in the case.

In September 2023, the DOJ and Defendant issued nearly identical document subpoenas to the City, seeking documents regarding the accessibility of Wrigley Field in connection with the 1060 Project. *See* Ex. 1. In October 2023, the City responded to the DOJ's subpoena with a production of documents—a production that Defendant also has—and DOJ has sought no further documents from the City. Even so, Defendant now moves to compel the City to review over 11,000 documents consisting of 179,000 pages and 13 gigabytes of data to find internal City communications regarding Project 1060. The City opposes this demand and moves to quash Defendant's subpoena ("Subpoena) in its entirety because the City's internal discussions are irrelevant to whether Defendant's renovations to Wrigley Field do or do not comply with the ADA's accessibility requirements, and any dubious relevance is significantly outweighed by the undue burden on the City. Defendant's seeking of additional documents is particularly unwarranted because a City department, the Mayor's Office for People with Disabilities ("MOPD"), already has reviewed approximately 20,000 emails and produced any documents referencing the Cubs or Wrigley Field to Defendant in response to a Freedom of Information Act Request ("FOIA") that Defendant's counsel submitted to MOPD in July 2022 shortly after DOJ filed this lawsuit.[1] Nevertheless, even though MOPD's emails were exhaustively reviewed, Defendant again seeks to have the City review its emails.

Finally, the internal communications sought by the Subpoena are protected by the deliberative process privilege, which is a separate and independent basis for why the Subpoena is

---

[1] In its October 2023 response to the DOJ's subpoena, the City produced to DOJ the same information it had produced to Defendant's counsel in response to Defendant's July 2022 FOIA request. As noted above, DOJ has not sought to require the City to produce additional documents beyond these.

improper. Based on the requested discovery's irrelevance, undue burden and privilege, Defendant's Subpoena should be quashed and its Motion denied.

## LEGAL STANDARD

Discovery sought must be "relevant to [a] party's claim or defense and proportional to the needs of the case," considering factors such as the importance of the discovery in resolving the issues in the case and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Courts must limit discovery under Rule 26(b)(2)(C)(iii) where: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Subpoenas are additionally governed by Rule 45, which requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter," R. 45(d)(3)(A)(iii), or when it "subjects a person to undue burden." R. 45(d)(3)(A)(iv). As to the latter, Rule 45(d)(1) requires "[a] party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

In determining whether the recipient of a subpoena is being subjected to undue burden, courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request, and the burden imposed on the subpoenaed party. *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 188 (N.D. Ill. 2013*)*. "[I]t has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is

undue." *Id.* "[C]ourts give special weight to the unwanted burdens thrust upon non-parties" because "while parties must accept the burdens of litigation, non-parties have different expectations." *Id*.

## ARGUMENT

I. **Defendant's Motion Should Be Denied Because It Seeks Irrelevant Information.**

Defendant offers two purported reasons why the information it seeks is relevant under Rule 26(b)(1). First, Defendant claims that internal City communications are relevant to whether Defendant's efforts to comply with the ADA were reasonable. Mot. at 6. Here, Defendant's alleged ADA violations pertain to wheelchair accessibility at Wrigley Field. Dkt. 1 at 1, 14-18. MOPD was the City department charged with reviewing Defendant's renovation plans regarding accessibility issues. See MCC Chapter § 14B-1101.2 (authorizing MOPD to implement local accessibility laws). But crucially, MOPD reviewed Defendant's renovation plans regarding whether they complied with *the City's* Accessibility Code, not the ADA. *See* MCC Chapter § 14B-11, 14-B-1101.3. The ADA is a federal statute under which DOJ—not the City—provides compliance advice to covered entities. 42 U.S.C. § 12206. The City is not responsible for interpreting or enforcing the ADA. *See* MCC 14B-11-1101.3. Thus, MOPD did not work "extensively" with Defendant "to ensure compliance with" the ADA, as Defendant inaccurately claims. *See* Mot. at 6. MOPD exists to ensure compliance with the City's Accessibility Code, which is *irrelevant* to this litigation. Thus, even if the City's burdensome review of over 11,000 documents located an internal email regarding the City's "understanding and discussions of the renovations [such as] any opinions or positions on what accessibility accommodations would be required or feasible," *Id.* at 6, that communication would pertain only to what the City's Accessibility Code requires and would not be relevant to whether Defendant complied with the

4

ADA. It would hardly "go[] to the heart of whether the Cubs made reasonable efforts to comply with Title III of the ADA." *Id*. Moreover, Defendant's assumption that City officials may have internally discussed Defendant's ADA compliance is entirely speculative and amounts to a frivolous fishing expedition, as that is not what MOPD undertakes to do.

Second, Defendant states that another defense is that the scope of its renovation was limited by Wrigley Field's landmark status and it baldly asserts, without citation, that it worked with the Commission on Chicago Landmarks ("Commission") to "ensure compliance" with a provision of a City ordinance designating Wrigley Field as a landmark, Def. Ex. C ("Ordinance"); this provision is regarding the stadium's open air character, exposed structural system, and the sweep and contour of the grandstand and bleachers. Mot. at 7. In this regard, the Subpoena seeks internal communications over a lengthy 5-year time period from numerous current and former employees of the City's Department of Planning and Development ("DPD") related to their alleged review of Project 1060 as it pertained to Wrigley Field's landmark status. But Defendant does not claim that the Commission or DPD advised it that any of its plans regarding wheelchair accessibility would interfere with this part of the stadium. Defendant also does not claim that any information the Commission or DPD conveyed to Defendant affected its compliance with the ADA's wheelchair accessibility requirements. Thus, it is unclear how anything the City actually discussed with Defendant regarding its renovation is relevant to this lawsuit, let alone how the internal emails of numerous DPD employees not on the Commission are relevant.[2] This is nothing more than another fishing expedition to seek to compel the City to review over 11,000 documents on a topic that lacks any factual or evidentiary foundation or

---

[2] Further, as explained *infra* in Section II, whatever information the City conveyed to Defendant regarding landmark requirements, is already in Defendant's possession, and can be presented through documents, emails, affidavits, depositions, and trial testimony.

5

nexus to what is at issue in this case: Defendant's ADA compliance. Based on the lack of relevance under Rule 26(b)(1), Defendant's Motion should be denied.

**II.  Defendant's Subpoena Additionally Should Be Quashed Based On Undue Burden.**

Five factors determine whether the burden imposed on the City is undue under Rule 45 (d)(3)(A)(iv) and warrants quashing of a subpoena: (1) the recipient's status as a non-party; (2) the relevance of the discovery sought; (3) the subpoenaing party's need for the documents; (4) the breadth of the request; and (5) the burden imposed on the subpoenaed party. *Parker v. Four Seasons Hotels, Ltd.,* 291 F.R.D. 181, 188 (N.D. Ill. 2013). As set forth in Section I, the discovery sought here lacks relevance, and the other factors additionally favor the City. As to the first factor, as a non-party, the City is entitled to special protection from unnecessary production burdens that are better allocated to the parties engaged in litigation. This factor is already given "special weight" by courts, *id.* at 188, but the City is uniquely entitled to further protection because of its status as a non-party government entity. Courts have found that government defendants have a special need to avoid the "undue burdens" associated with frivolous, "uncontrolled discovery" so that they can conserve limited public resources. *Stokes v. City of Chicago*, 1986 WL 12311, at *1 (N.D. Ill. Oct. 24, 1986) (staying discovery against public officials because "uncontrolled discovery" imposes an "undue burden" on the time and resources of public officials and agencies); *Chagnon v. Bell*, 643 F.2d 1248, 1266 (D.C. Cir. 1980) (same). Here, as explained *supra* at 4-5, Defendant's discovery amounts to a fishing expedition, which is frivolous, and thus a very poor use of government resources.

Further, Defendant has not established its "need" for the requested documents. Defendant already has information in its possession regarding its landmark conformance defense—namely, its own internal documents as well as the alleged "hand-in-hand" work of

6

Defendant and the Commission "to ensure compliance" with Wrigley Field's landmark status. Mot. at 7. That information, which would include whatever statements or directions the Commission conveyed to Defendant regarding landmark requirements or obligations, is already in Defendant's possession, and can be presented through documents, emails, affidavits, depositions, and trial testimony. There is no need to go beyond this and fish through the City's internal communications. And as for Defendant's defense that it made reasonable efforts to comply with the ADA, the information it now seeks is duplicative of its July 2022 FOIA. Specifically, in its FOIA, Defendant sought from MOPD the same records it seeks here, namely "all records relating to Chicago Cubs and/or Wrigley Field, including but not limited to the 1060 Project to renovate and restore Wrigley Field." Ex. 2. MOPD reviewed approximately 20,000 emails, and produced any documents referencing the Cubs or Wrigley Field. Ex. 3[3] at 17-18. Nevertheless, even though the emails of Joseph Russo, MOPD's former Deputy Commissioner of its Accessibility Compliance Unit, were exhaustively searched, Defendant again seeks to have the City search Mr. Russo's emails. Mot. at 7. Given the duplicative nature of its request regarding documents the City has already produced to Defendant, it fails to establish need.

Finally, as to factors four and five, the burden associated with this overbroad request is great. Defendant seeks to have the City review 11,536 documents, totaling over 179,000 pages and comprising 13 gigabytes of data. To facilitate the production the Defendant seeks, the City would be required to undertake a complex, multi-layered review for (1) responsiveness, (2) attorney-client and deliberative process privileges, (3) redactions for information about unrelated projects that these City agencies are involved with, and (4) preparation of a privilege log. As

---

[3] The City's Ex. 3 is the same as Defendant's Ex. B, the only difference being the City has added page numbers at the bottom right, which it cites to herein.

explained in Section IV below, the City reviewed 250 documents gathered in the test searches it conducted, which consumed 8 hours of attorney time. Extrapolating out from 250 documents, reviewing 11,536 documents would encompass more than 350 hours, or 9 weeks of an attorney reviewing the documents full-time for 40 hours a week. This would impose a significant burden on the City, given the large number of cases in which it is representing the City as an actual party defendant in federal and state court. And it would be unwarranted given the City's prior review of 20,000 emails covering the topics of this Subpoena. Defendant's unduly burdensome Subpoena therefore should be quashed under Rule 45.[4]

### III. Defendant's Subpoena Also Should be Quashed Based On Privilege.

Under Rule 45(d)(3)(A)(iii), a subpoena also may be quashed when it requires disclosure of privileged matter. Here, Defendant is seeking the types of internal City communications that directly fall within the scope of the deliberative process privilege. This privilege "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citation omitted). The purpose of the privilege is to encourage candid discussion among government agents: "[s]ince frank discussion of legal and policy matters is essential to the decision-making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure." *Id*. The privilege shields from discovery documents that "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as [*sic*] agency position that which is as yet only a personal position." *Santiago v. City of Chicago*, No. 1:19-CV-04652, Dkt. # 188, (N.D. Ill. Nov. 14, 2023) (citation omitted). In its Motion, Defendant acknowledges that the documents it is seeking are entirely deliberative in nature. Specifically, Defendant seeks

---

[4] For the same reasons that the Subpoena is an undue burden under Rule 45, it lacks proportionality under Rule 26(b)(1).

8

"internal discussions showing the City's understanding of the renovation and any opinions or positions on what accessibility accommodations would be required or feasible." Mot. at 6. Defendant additionally seeks the City's internal deliberative discussions about "why the City issued permits for construction," "what the City's internal review revealed about the accessibility of the ballpark," and "how the City interpreted the landmark ordinance with respect to protected features at the ballpark." Mot. at 7-8. Although Defendant argues that the privilege must be invoked on a document-by-document basis, that is not required where a discovery request seeks "unfettered access" to categories of information that are clearly subject to deliberative process privilege. *See DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *6-8 (N. D. Ill. Jul. 22, 2021) (quashing portion of a third-party subpoena under Rule 45, which had sought inquire to about the government's decision-making process involving certificate of innocence proceedings on the ground that the deliberative process privilege shields such pre-decisional deliberations).

Here, the aforementioned information Defendant seeks goes to the heart of the what the deliberative process privilege protects. Therefore, Defendant's Subpoena should additionally be quashed on this basis.

### IV. Alternatively, The Court Should Modify The Subpoena To Conform To the City's Proposal.

The City maintains that the Subpoena should be quashed in its entirety because it is an unduly burdensome fishing expedition that attempts to locate irrelevant and privileged information. Alternatively, were the Subpoena not quashed in its entirety, it should be modified based on the terms the City proposed during the meet-and-confer process. As an initial matter, Defendant's recounting of that process is inaccurate and incomplete, which bears on the scope of any modification. The City thus provides a summary here.

Defendant originally sought discovery of the DPD employees proposed presently, <u>not through its Subpoena</u>, but instead through a March 2023 FOIA request that Defendant's counsel issued to DPD. *See* Ex. 4. In response to that request, DPD conducted a test search using Defendant's proposed search terms, which resulted in 15,000 documents. *See* Ex. 3 at 17. DPD thereafter denied the FOIA request on grounds of burdensomeness. *Id*. Months later, Defendant issued this Subpoena, and on October 18, 2023, Defendant's counsel sent the City search parameters consisting of 11 search terms and 9 custodians ("first test search"). *Id*. at 24-25. The City agreed to have its Department of Assets, Information and Services ("AIS") run a test search to determine the number of documents implicated so the City could assess the burden associated with the proposed review. This test search resulted in 11,536 documents consisting of 179,000 pages and 13 gigabytes of data, the vast majority of which were emails belonging to DPD employees. *Id.* at 12. On November 10, 2023, Defendant acknowledged its proposal was too broad by sending the City an attempt at narrowing the volume—namely, the 4 search terms that Defendant lists in its Motion. Mot. at 3 and Ex. 3 at 14. Counsel for the City was able to determine that these 4 search terms still would likely hit on all or nearly all of the 11,536 documents as were identified during the first test search. Ex. 3 at 12.

Because Defendant's proposal did not reduce the volume of documents, on November 17, 2023, Defendant's counsel sent the City a second search term list, which the parties fine-tuned in an attempt to limit the universe of documents to a reasonable quantity. *Id*. at 7-12. On December 1, 2023, after receiving results from its AIS department, the City informed Defendant that the second test search resulted in 5,355 documents consisting of 86,486 pages and 5.15 gigabytes of data. *Id.* at 4-5. The City explained that given the dispute over relevancy and the undue burdensomeness of reviewing 5,355 documents, it could not agree to that quantity. *Id.* at

10

4. The City narrowed the search further to reduce the volume to 1,265 documents and nearly 20,000 pages, which it advised Defendant it was willing to review in an attempt to resolve the matter despite the dispute over relevancy. *Id.* In its December 1, 2023 reply, Defendant stated, without explanation, that it thought 5,355 documents was reasonable and it would move to compel that volume unless the City agreed. *Id.* at 3-4.

      Were the Court not to quash the Subpoena in its entirety for all the reasons stated above, and instead seek to modify it, the second test search that resulted in 5,355 documents (consisting of more than 85,000 pages) would not be a reasonable modification, because it too would subject the City to undue burden.[5] After Defendant advised it was going to move to compel the 5,355 documents unless the City agreed to review them, the City conducted a review of a sample set of the documents to determine the amount of attorney time to review all of them. Reviewing 250 documents conservatively resulted in over 8 hours of attorney time, and the City informed Defendant of this fact. *Id.* at 1. Extrapolating out, reviewing 5,355 documents would encompass 170 hours, or more than 4 weeks of an attorney reviewing the documents full-time for 40 hours a week. This would have a significant and deleterious impact on the City. Further, the City's efforts would be for naught, because they would be extremely unlikely to yield documents not in already Defendant's possession that would ultimately be produced. Indeed, the sample review of the 250 documents showed that 99% were non-responsive, *id.* There were only 3 potentially responsive documents. Of those, 2 were attachments to an email where Defendant was a

---

[5] Nor would review of the 11,536 documents identified in response to the first test search be reasonable. Indeed, reverting to that universe after Defendant stated its intention to move to compel review of the universe of 5,355 documents, *id.* at 2, is inconsistent with the obligation under Rule 45(d)(1) to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

recipient, and thus already in Defendant's possession. *Id.* The remaining document is subject to the deliberative process privilege. *Id.*

The City therefore submits that were the Court to order a modification, the scope of review should consist of the 1,265 documents resulting from the City's December 1, 2023 proposal. *Id.* at 4-5. These documents are contained within the second test search of 5,355 documents that used *Defendant's* desired search terms, and which the City narrowed further to focus on documents referencing wheelchair, landmark, disability, and seat. *Id.* at 4-5. Defendant had the opportunity to suggest an alternative narrowing but declined to do so and instead moved to compel. Now, Defendant belatedly complains of terms not included in the City's proposed search, namely "accessibility," "protected feature," and "front row." Mot. at 4. But removal of "accessibility," an overbroad search term that goes beyond wheelchair seating, was for good measure. And "protected feature" and "front row" are covered by similar terms, "landmark," "seat" and "seating," which the City has included. Again, Defendant proposed no alternative to a further narrowed search.

## CONCLUSION

WHEREFORE, the City respectfully requests that the Court enter an order denying the Motion to Compel, quashing the Subpoena, and granting the City such further relief as is just and proper.

Date:  December 22, 2023                    Respectfully submitted,

JENNIFER ZLOTOW                             CITY OF CHICAGO
Jennifer.Zlotow@cityofchicago.org
JACKSON GARRITY                             By:   /s/ *Jennifer Zlotow*
Jackson.Garrity@cityofchicago.org                 Jennifer Zlotow
City of Chicago, Department of Law                Senior Counsel
Constitutional and Commercial
  Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-4985