UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 3639 |
| v. | ) | |
| | ) | Judge Pacold |
| CHICAGO BASEBALL HOLDINGS, LLC; | ) | |
| WRIGLEY FIELD HOLDINGS, LLC; WF | ) | |
| MASTER TENANT, LLC; and CHICAGO | ) | |
| CUBS BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

### I. INTRODUCTION

1.     On July 14, 2022, the United States of America filed a complaint against Chicago Baseball Holdings, LLC; Wrigley Field Holdings, LLC; WF Master Tenant, LLC; and Chicago Cubs Baseball Club, LLC (collectively, "the Cubs"), primarily alleging that recent additions and alterations at Wrigley Field are not readily accessible to and usable by individuals with disabilities, as required by Title III of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12181-89, as well as Title III's implementing regulation, 28 C.F.R. Part 36.  The case arises out of a multi-year, multi-phase renovation project at Wrigley Field known as the "1060 Project," which began after the 2014 baseball season and was primarily completed during five phases coinciding with successive offseasons.  The complaint alleges ADA violations relating to wheelchair spaces and companion seats at the stadium, as well as other accessibility issues.

2.     The Cubs deny the allegations in the complaint and deny that they have violated Title III of the ADA or its implementing regulation.  Nothing in this Consent Decree constitutes an admission of liability on the part of the Cubs.  Nevertheless, the Cubs have agreed to entry of

this Consent Decree without admitting the allegations in the complaint or any issue of fact or law to demonstrate their commitment to accessibility for people with disabilities and to ensure resolution of the above-captioned matter.

3.      The United States and the Cubs agree that entry of this Consent Decree without further litigation is in the public interest.

NOW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## II.      JURISDICTION AND VENUE

4.      The court has subject matter jurisdiction over this ADA action under 28 U.S.C. §§ 1331 and 1345.

5.      The court has the authority to grant the relief in this Consent Decree under 42 U.S.C. § 12188(b)(2), as well as 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b).

## III.      PARTIES

7.      The plaintiff is the United States of America.  The United States, through the Department of Justice, is authorized to enforce the ADA under 42 U.S.C. § 12188(b)(1)(B).

8.      Defendant Wrigley Field Holdings, LLC is a limited liability company that owns Wrigley Field.

9.      Defendant WF Master Tenant, LLC is a limited liability company that leases Wrigley Field from Wrigley Field Holdings, LLC.

10.      Defendant Chicago Cubs Baseball Club, LLC is a limited liability company that subleases Wrigley Field from WF Master Tenant, LLC.  It designed, constructed, and made

alterations to the Wrigley Field facility in connection with the 1060 Project. 42 U.S.C. § 12183; 28 C.F.R. Part 36, Subpart D.

11. Chicago Baseball Holdings, LLC is a limited liability company that owns Chicago Cubs Baseball Club, LLC and Wrigley Field Holdings, LLC. A subsidiary of Chicago Baseball Holdings, LLC owns an interest in WF Master Tenant LLC.

12. All four defendants (again, referred to collectively as "the Cubs" throughout this Consent Decree) are covered entities for purposes of Title III of the ADA because they own, operate, and/or lease Wrigley Field, a place of public accommodation; and Chicago Cubs Baseball Club, LLC participated in the design and construction or alteration of the facility. 42 U.S.C. §§ 12182(a), 12183; 28 C.F.R. §§ 36.201(a), 36.401-36.403.

13. Wrigley Field is a place of public accommodation within the meaning of Title III of the ADA because its operations affect commerce and it is a "stadium, or other place of exhibition or entertainment," as well as a "place of public gathering." 42 U.S.C. § 12181(7)(C), (D); 28 C.F.R. § 36.104.

## IV. APPLICATION AND PARTIES BOUND

14. This Consent Decree applies to and is binding upon the United States and the Cubs.

15. This Consent Decree also applies to and binds any and all successors in interest and assignees of the Cubs.

16. The Cubs will notify all successors in interest and assignees of this Consent Decree.

17. The undersigned representatives of the parties certify they are authorized to enter into and consent to the terms and conditions of this Consent Decree and to execute and legally bind the parties to it.

3

## V.    SPECIFIC RELIEF

### A.    Wheelchair Spaces and Companion Seats

18.    As used in this Consent Decree, the term "Wrigley Field" means the baseball stadium located at 1060 West Addison Street in Chicago, Illinois.

19.    The Cubs will make the following remediations relating to wheelchair spaces and companion seats at Wrigley Field as set forth below.

20.    Consistent with the 2010 ADA Standards for Accessible Design ("2010 Standards"), the term "wheelchair space" means a space for a single wheelchair and its occupant. The term "companion seat" means a seat for one companion.

21.    The seating section numbers described in this Consent Decree refer to the 2024 Wrigley Field seating map attached as Exhibit A.

22.    The wheelchair spaces and companion seats will be constructed in accordance with the plans and specifications attached as Exhibit B.

23.    Unless otherwise specified below and in Exhibit B, the wheelchair spaces described in this Consent Decree will comply with sections 802.1 and 802.2 of the 2010 Standards.  The companion seats will comply with section 802.3, and may be a movable chair equivalent in size, quality, comfort, and amenities to the seating in the immediate area.

### 1.    Lower Deck

24.    The Cubs will install two wheelchair spaces and two companion seats in the front row of Section 6 adjacent to the designated seating area for the W Club and provide an accessible route to these spaces to include a platform lift from within the W Club.

25.     The Cubs will install a total of six wheelchair spaces and six companion seats collectively in the front row of Sections 23 and 24 behind the visitors' dugout and provide an accessible route to these spaces to include a platform lift adjacent to that area.

26.     To improve the line of sight to the field, the Cubs will eliminate one additional row of standard seats in front of the existing wheelchair spaces and companion seats currently at the rear of Sections 101-104, 118-120, and 130-133; extend the existing platforms with wheelchair spaces and companion seats forward one row; and provide an accessible route to these wheelchair spaces and companion seats on the extended platforms.

27.     The Cubs will eliminate the existing designated wheelchair locations currently at the rear of Sections 105, 117 and 134.

28.     The Cubs will install two wheelchair spaces and two companion seats in the front row of Section 218 and provide an accessible route to these spaces to include the existing vertical lift at the adjacent vomitory.

29.     The Cubs will install a new wheelchair platform consisting of five wheelchair spaces and five companion seats at the rear of Section 232; provide an accessible route to these wheelchair spaces and companion seats; and may eliminate the five total existing designated wheelchair locations currently at the rear of Sections 230 and 231.

**2.     Upper Deck**

30.     The Cubs will install seven new wheelchair spaces and seven new companion seats at the rear of Sections 318R and 319R (install a new wheelchair platform consisting of five new wheelchair spaces and five new companion seats in Section 318R and extend the existing wheelchair platform to install two additional wheelchair spaces and two companion seats in

Section 319R, for a total of four wheelchair spaces and four companion seats in Section 319R and nine wheelchair spaces and nine companion seats collectively between Sections 318R and 319R), and provide an accessible route to these wheelchair spaces and companion seats.

31.     The Cubs will install new wheelchair platforms consisting of two wheelchair spaces and two companion seats each in front of or near the vomitories at Sections 307, 312, 322, and 327 (for a total of eight wheelchair spaces and eight companion seats), and provide an accessible route to these wheelchair spaces and companion seats.

32.     The Cubs will extend the existing wheelchair platform at the rear of Section 303 forward to match the depth of the existing wheelchair platform at the rear of Section 304.

33.     To improve the line of sight to the field, the Cubs will extend the existing wheelchair platform at the rear of Section 323 forward approximately four inches so that the wheelchair platform is approximately 31 inches in depth; and extend the length to install two additional wheelchair spaces and two companion seats on this extended platform (for a total of six wheelchair spaces and six companion seats at the rear of this section on the extended platform); and provide an accessible route to all wheelchair spaces and companion seats on this extended platform.

34.     To improve the line of sight to the field, the Cubs will extend the existing wheelchair platform at the rear of Section 306 forward approximately four inches so that the wheelchair platform is approximately 31 inches in depth; and extend the length to install three additional wheelchair spaces and three companion seats (for a total of seven wheelchair spaces and seven companion seats at the rear of this section); and provide an accessible route to all wheelchair spaces and companion seats on this extended platform.

6

35.    The Cubs will eliminate the existing designated wheelchair locations currently at the rear of Sections 309, 313, and 328.

### 3.    Bleachers

36.    The Cubs will sell two wheelchair spaces and two companion seats located in the Batter's Eye area in centerfield between Sections 507 and 511 as wheelchair spaces and companion seats.

37.    The Cubs will not sell or designate the area near the left field foul pole adjacent to Section 501 as wheelchair spaces and companion seats, and will install a new wheelchair platform consisting of three wheelchair spaces and three companion seats at the rear of Section 501 that will be no higher than the existing top row of that section, and provide an accessible route to these wheelchair spaces and companion seats.

38.    The Cubs will install a new wheelchair platform consisting of seven wheelchair spaces and seven companion seats at the rear of Section 502 that will be no higher than the existing top row of that section, and provide an accessible route to these wheelchair spaces and companion seats.

39.    The Cubs will not sell or designate the general admission area at the rear of Section 506 as wheelchair spaces and companion seats.  With respect to wheelchair spaces and companion seats provided at the rear of Sections 504 and 505 in the group portion of the area currently known as the Left Field Porch, the Cubs will continue to reserve the two rows of standard bleacher seats in front of these areas for use by the groups purchasing the group hospitality areas at the rear of Sections 504 and 505.

40.     The Cubs will install a new wheelchair platform consisting of three wheelchair spaces and three companion seats in Section 507 by eliminating the existing riser on the left field side of the Batter's Eye area and provide an accessible route to these wheelchair spaces and companion seats.

41.     The Cubs will install a new wheelchair platform at the rear of Section 514 that covers the existing top two rows of that section; install eight wheelchair spaces and eight companion seats on the new platform at the rear of that section; and provide an accessible route to these wheelchair spaces and companion seats.  The Cubs will use stanchions or other similar barriers to ensure that this wheelchair platform remains vacant and available for use by individuals with disabilities, at least until the end of the third inning for baseball games at Wrigley Field.  The Cubs may remove the stanchions or other similar barriers after the end of the third inning for areas not occupied by wheelchair users and companions, but Cubs staff will continue to ensure that additional wheelchair users and companions with general admission bleacher tickets are able to access the area, should they wish to do so, including by directing other spectators to leave the area as needed.

42.     When needed for overflow, the Cubs will provide up to four general admission wheelchair spaces and four companion seats at the rear of Section 516 in the area currently designated as the Budweiser Patio for use as needed (i.e., when the wheelchair spaces and companion seats otherwise provided in the bleachers are fully used by individuals with disabilities who require wheelchair spaces).  The Cubs will ensure these wheelchair spaces and companion seats are offered for sale on a general admission basis, and that general admission wheelchair users and companions are directed to this area, when the wheelchair spaces and companion seats

8

otherwise provided in the bleachers are fully used by individuals with disabilities who require wheelchair spaces.

**B.      Bleacher Suite**

43.      The Cubs will ensure that the serving counter and dining surfaces in the area currently known as the Bleacher Suite beneath the centerfield area between Sections 507 and 511 in the bleachers comply in all respects with the ADA, its implementing regulation, and the 2010 Standards.

44.      The Cubs also will provide an accessible route into that area (which may be provided via a folding incline platform lift), by opening day 2028, to the extent the Bleacher Suite still provides services to fans at that time.

45.      If the Cubs decide to renovate this area for the purpose of continuing to provide services to fans (other than cosmetic improvements, such as painting, etc.), the Cubs will provide to the United States for review and approval, as soon as they are available, plans and specifications for any renovations, including, at a minimum, the final schematic design, design development, and construction documents for such renovations.  Such approval will not be unreasonably denied. The Cubs will provide the United States with 30 days' written notice prior to the issuance of such materials.  If the Cubs decide to eliminate this area and/or no longer provide services to fans in this area, the Cubs will provide the United States with 30 days' written notice.

**C.      Designated Aisle Seats**

46.      The Cubs will provide 187 designated aisle seats complying with sections 221.4 and 802.4 of the 2010 Standards in the grandstand, in accordance with the drawings and plans attached as Exhibit C.

9

**D.**    **Additional Remediations**

47.    The Cubs will make the additional remediations at Wrigley Field that are specified in Exhibit D.

**E.**    **Timing and Approvals**

48.    Subject to timely review and sign-off from the United States (which shall not be unreasonably withheld, conditioned, or delayed), and except as otherwise noted herein (including paragraph 76 below), the Cubs will ensure that the remediations relating to wheelchair spaces and companion seats in the upper deck and the bleachers that are described in sections V.A.2 and V.A.3 above and reflected in Exhibit B will be completed during the 2024-2025 offseason and will be in place for opening day 2025.

49.    Subject to timely review and sign-off from the United States (which shall not be unreasonably withheld, conditioned, or delayed), and except as otherwise noted herein (including paragraph 76 below), the Cubs will ensure that the remediations relating to wheelchair spaces and companion seats in the lower deck that are described in section V.A.1 above and reflected in Exhibit B will be completed during the 2025-2026 offseason and will be in place for opening day 2026.

50.    The remediations relating to wheelchair spaces and companion seats described in section V.A above may be subject to and contingent upon approval by the Chicago Department of Buildings, the Commission on Chicago Landmarks, and the Illinois State Historic Preservation Office.  The parties will work cooperatively with respect to obtaining such approvals, where required.  If any such approval is denied, and the denial materially alters the rights or obligations of the parties with respect to the provision of wheelchair spaces and companion seats as set forth

10

in this Consent Decree, the United States and the Cubs will engage in good faith negotiations in order to adopt such mutually agreeable amendments to this Consent Decree as may be necessary to restore the parties as closely as possible to the initially agreed-upon relative rights and obligations between them and will jointly seek the court's approval of such mutually agreeable amendments. "Good faith negotiations" shall include mediation and/or otherwise seeking the court's assistance prior to determining a mutually agreeable amendment is not possible. If the parties are unable to adopt such mutually agreeable amendments through good faith negotiations, those provisions of the Consent Decree pertaining to wheelchair spaces and companion seats in the area(s) of the stadium affected by the denial of agency approval (i.e., lower deck, upper deck, or bleachers) will be deemed null and void, and the United States may undertake further investigation into and/or pursue further legal proceedings regarding wheelchair spaces and companion seats in the applicable area(s) of the stadium; all other provisions, including those pertaining to wheelchair spaces and companion seats in areas of the stadium not affected by the denial of agency approval and those pertaining to additional remediations set forth in Exhibit D, shall remain in effect.

51.    The Cubs will ensure that the designated aisle seats that are described in section V.C above and reflected in Exhibit C, to the extent not already installed, are installed in accordance with the timelines set forth in this paragraph: (a) designated aisle seats in the lower deck will be in place for opening day 2025; (b) designated aisle seats in the 300 sections of the upper deck will be completed during the 2024-2025 offseason and will be in place for opening day 2025; and (c) designated aisle seats in the 400 sections of the upper deck will be completed during the 2025-2026 offseason and will be in place for opening day 2026.

52.     The Cubs will ensure that the additional remediations described in section V.D above and reflected in Exhibit D are completed during the 2024-2025 offseason and in place for opening day 2025 (subject to paragraph 76 below).

**F.     Ticketing for Wheelchair Spaces and Companion Seats**

53.     Ticketing for all wheelchair spaces and companion seats at Wrigley Field, including but not limited to those discussed in this Consent Decree, will comply with the ADA, including 28 C.F.R. § 36.302(f), except to the extent otherwise provided in the ticketing policy attached as Exhibit E for the new wheelchair spaces and companion seats in Sections 6 and 23-24, as well as the existing wheelchair spaces and companion seats in Section 315L. Ticketing for wheelchair spaces and companion seats in Sections 6, 23-24 and 315L will comply with the ticketing policy attached as Exhibit E.

54.     One wheelchair space and companion seat in the newly constructed wheelchair platform at the rear of Section 501 in the bleachers will be attributed to Hornitos Hacienda and may be used to accommodate patrons with disabilities of Hornitos Hacienda when the need exists.

55.     Neither wheelchair spaces nor companion seats at Wrigley Field will be used for television cameras, broadcast booths, or other similar operations.

56.     Nothing herein shall be interpreted as precluding the Cubs from utilizing unsold wheelchair spaces and companion seats for a particular game for such purposes set forth in paragraph 55 after the conditions for release of such unsold seats are met for that particular game, as set forth in the ticketing policy attached hereto as Exhibit E for the wheelchair spaces and companion seats in Sections 6, 23-24, and 315L, and in 28 C.F.R. § 36.302(f) for the remaining wheelchair spaces and companion seats at Wrigley Field.

12

### G. Training

57. Prior to the start of each baseball season for three years after entry of this Consent Decree, the Cubs will provide job-appropriate training on this Consent Decree, including appropriate exhibits, to all of its employees and contractors whose job responsibilities involve contact with patrons with disabilities who use Wrigley Field.

### H. Marketing and Publicity

58. Beginning in October 2024 and continuing for three years after entry of this Consent Decree, (a) the Cubs will publicize the availability and location of, as well as the ticketing prices for, wheelchair spaces and companion seats, and the availability of designated aisle seating at Wrigley Field in all event schedules, pamphlets, programs, advertisements, and publications (including the Cubs' website) that contain corresponding information concerning seating at Wrigley Field; (b) information regarding policies, practices, and procedures for purchase of wheelchair spaces, companion seats, and designated aisle seats shall be provided on the Cubs' website; (c) policies, practices, and procedures pertaining to the wheelchair spaces and companion seats in Sections 6, 23-24, and 315L, including the availability of such wheelchair spaces and companion seats for patrons of the W Club, the 1914 Club, the Maker's Mark Barrel Room, and the Catalina Club, as well as the time periods during which such wheelchair spaces and companion seats are offered for sale to individuals with disabilities who are not patrons of one or more of these four clubs, shall be provided on the Cubs' website; (d) to the extent the Cubs issue event schedules, pamphlets, programs, advertisements, or other publications that contain information regarding the availability for purchase or sale of seating at Wrigley Field or W Club, 1914 Club, Maker's Mark Barrel Room, and Catalina Club memberships, such publications shall note the

availability of wheelchair spaces and companion seats and include either a hyperlink to or URL where the respective information set forth in subsections (b) and (c), as appropriate, is located; and (e) any "mailings" (including electronic mail) regarding availability or sale of W Club, 1914 Club, Maker's Mark Barrel Room, and Catalina Club memberships shall note the availability of accessible seating and include either a hyperlink to or URL where the information set forth in subsection (c) is located. Social media postings shall not be subject to the requirements of subsections (a) through (e) above. These publications and communications will also include targeted outreach to the disability rights community. The publications and communications targeted to the disability rights community will include information informing individuals with disabilities how to timely obtain notifications from the Cubs regarding any single game tickets that may become available.

59. The advertising, communications, and publications referenced in the preceding paragraph 58 will occur during the time period when such tickets will be first offered for sale to individuals who use wheelchairs and their companions.

## VI.    FUTURE ALTERATIONS

60. Any future alterations, as used and defined in 42 U.S.C. § 12183(a)(2) and 28 C.F.R. § 36.402(b), made to Wrigley Field that are not described in this Consent Decree will comply in all respects with the ADA, its implementing regulation, and the applicable ADA Standards for Accessible Design, as such statute, regulation, and Standards are in effect as of the date that alterations begin.

61. In the event of any future alterations to Wrigley Field that would affect the location or configuration of wheelchair spaces and companion seats, as modified by this Consent Decree,

the Cubs will provide to the United States for review and approval, as soon as they are available, plans and specifications, including sightline drawings from the wheelchair spaces to the field, for the altered wheelchair spaces and companion seats sufficient to determine that the altered wheelchair spaces and companion seats will comply with the ADA and this Consent Decree. Such plans and specifications will include, at a minimum, the final schematic design, design development, and construction documents for such alterations. The Cubs will provide the United States with 30 days' written notice prior to the issuance of such materials, and the United States will respond to the Cubs within 15 business days of any concerns with the alterations, subject to any extensions that may be mutually agreed to by the parties. Both parties acknowledge and agree, however, that in order to afford sufficient time for permitting and completion of construction during the respective offseasons, timely receipt of any concerns the United States may have regarding the alterations is a material factor in the Cubs' ability to meet construction deadlines. In the event such receipt is delayed, it may be necessary for the Cubs to proceed with permitting and/or commencement of construction in the interim, subject to any modifications that may be ordered by the court pursuant to section VII.B. below or otherwise agreed to by the parties pursuant to paragraph 63.

62.    The Cubs will comply with all other reasonable requests from the United States for documents or information that would assist in determining whether future alterations affecting the location or configuration of wheelchair spaces and companion seats, as modified by this Consent Decree, comply in all respects with the ADA. The United States will respond within 15 business days of the Cubs providing any requested documents or information, subject to any extensions that may be mutually agreed to by the parties. Both parties acknowledge and agree, however, that in

order to afford sufficient time for permitting and completion of construction during the respective offseasons, timely receipt of any concerns the United States may have regarding the alterations is a material factor in the Cubs' ability to meet construction deadlines. In the event such receipt is delayed, it may be necessary for the Cubs to proceed with permitting and/or commencement of construction in the interim, subject to any modifications that may be ordered by the court pursuant to section VII.B. below or otherwise agreed to by the parties pursuant to paragraph 63.

63.     The approval of the United States as it relates to the future alterations discussed herein will not be unreasonably denied. In the event the United States concludes that the altered wheelchair spaces and companion seats will not comply in all respects with the ADA and this Consent Decree, the United States will provide the Cubs with proposed changes it believes necessary for such compliance within 15 business days, subject to any extensions that may be mutually agreed to by the parties. The parties will engage in good faith negotiations in an effort to reach agreement on such changes. If the parties are unable to reach agreement, either party may petition the court for relief, as set forth in section VII.B below. In such event, the Cubs may nonetheless proceed with the alterations, subject to the need to modify the plans if ordered to do so by this court.

## VII.    REPORTING, MONITORING, AND ENFORCEMENT

### A.    Reporting and Monitoring

64.     On or before June 1, 2025, and June 1, 2026, the Cubs will submit to the United States a written report ("Architectural Report"), detailing their compliance with the obligations in this Consent Decree that were required to be completed during the preceding offseason. This Architectural Report will include, but will not be limited to, photographic documentation of all

16

remediations to include dimensions to determine compliance and final construction documents showing the as-built location and condition of all remediations included in the final construction documents, including but not limited to the new and modified wheelchair spaces and companion seats, the designated aisle seats, and accessible routes.

65.     On or before December 30, in each year from 2026 through 2028, the Cubs will submit to the United States a written report ("Seating and Ticketing Report"), primarily detailing their compliance with the ticketing policy attached as Exhibit E. This Seating and Ticketing Report will include, but will not be limited to, information regarding the wheelchair spaces and companion seats in Sections 6, 23-24, and 315L, including whether they were sold: (a) to patrons of the W Club, the 1914 Club, the Maker's Mark Barrel Room, or the Catalina Club; (b) on a season or non-season basis to individuals with disabilities who are not patrons of any of these premium clubs; or (c) to individuals without disabilities. This Seating and Ticketing Report will also include information regarding the extent to which one or more of the new wheelchair spaces and companion seats at the rear of Section 501 were used by patrons of Hornitos Hacienda, and the extent to which the existing wheelchair spaces and companion seats currently at the rear of Section 516 were used for general admission purposes.

66.     Outside of, and in addition to, the written reports described above, the United States may otherwise review compliance with this Consent Decree at any time in the three years following entry of this Consent Decree. Upon reasonable advance written notice to the Cubs through counsel, the United States and any persons acting on its behalf, including experts and consultants provided they are accompanied by one of the undersigned United States attorneys, or other attorney representing the United States, will be permitted reasonable access to Wrigley Field

17

for the purposing of reviewing compliance with this Consent Decree. Such review will be at the sole cost and expense of the United States and will not require any disruption of the Cubs' business operations.

### B. Enforcement

67. If the United States believes that this Consent Decree or any portion thereof has been violated, it will provide written notice (including detailed particulars) of such violation(s) to the Cubs through counsel, and the Cubs will then respond to such notice and/or cure any non-compliance within 30 days.

68. The parties will negotiate in good faith in an attempt to resolve any dispute relating to compliance with the Consent Decree.

69. If any dispute under this Consent Decree is not resolved through good faith negotiations, either party may petition the court for relief.

70. A violation of this Consent Decree will be deemed a subsequent violation of the ADA for purposes of 42 U.S.C. § 12188(b) and 28 C.F.R. § 36.504. Notwithstanding the foregoing, nothing in this Consent Decree shall be construed as requiring the imposition of a civil penalty in the event of an alleged subsequent violation of the ADA. Both the United States and the Cubs reserve all rights with respect to whether a civil penalty and/or the amount of such civil penalty is appropriate given the nature of any alleged subsequent violation.

### VIII. MISCELLANEOUS

### A. Consideration and Release

71. In consideration for, and consistent with, the terms of this Consent Decree, the United States agrees to refrain from undertaking further investigation (including initiating further

18

compliance reviews) into or pursuing further legal proceedings regarding all claims that were brought in the above-captioned litigation, all matters contained within this Consent Decree and its attachments, and all claims that could have been brought in the above-captioned litigation relating to (a) the number, location, and dispersion (whether vertical or horizontal or pertaining to ticket price) of, accessible routes to, and sightlines from wheelchair spaces and companion seats; (b) ticketing policies and practices for wheelchair spaces and companion seats; and (c) any architectural and/or physical conditions at Wrigley Field relating to the accessibility of (including accessible routes to) the Press Box, private suites, counters (including condiment counters and ticket windows), dining and bar surfaces, toilet rooms, protruding objects, operable parts, reach range to elements required to be accessible, circulation paths, signs, and parking and shuttle service, existing as of the Effective Date of this Consent Decree, except as provided in section VII.B above (hereinafter referred to as the "Released Claims"). The United States releases the Cubs, together with their current and former direct and indirect parents, direct and indirect subsidiaries, brother or sister entities, divisions, current or former owners, operators, lessors and lessees of (or any premises within) Wrigley Field, and the successors and assigns, employees and representatives, of any of them from the Released Claims.

72. The release set forth in paragraph 71 shall not be construed as precluding the United States from undertaking further investigation into or pursuing further legal proceedings with respect to other aspects of ADA compliance. By way of clarification, this release also shall not be construed as precluding the United States from undertaking further investigation into or pursuing further legal proceedings regarding the Cubs' adherence to its ticketing policies and practices for wheelchair spaces and companion seats existing as of the Effective Date of this Consent Decree

and/or as modified by this Consent Decree; any administrative complaints related to or involving the alleged noncompliance of the Cubs' existing ticketing policies and practices with the ADA or its implementing regulation, including 28 C.F.R. § 36.302(f); the compliance of the Cubs' existing ticketing policies and practices with any future amendments to the ADA or its implementing regulation, including 28 C.F.R. § 36.302(f); or the compliance of any future or amended ticketing policies and practices for accessible seating with the ADA and its implementing regulation, including 28 C.F.R. § 36.302(f). If the United States receives any administrative complaints related to or involving the alleged noncompliance of the Cubs' existing ticketing policies and practices with the ADA or its implementing regulation, including 28 C.F.R. § 36.302(f), and believes that the ADA or its implementing regulation have been violated, the United States will provide written notice (including detailed particulars) of such alleged violation(s) to the Cubs through counsel, and the Cubs will then respond to such notice and/or cure any non-compliance within 30 days. The parties will negotiate in good faith in an attempt to resolve any dispute relating to such alleged noncompliance with the ADA or its implementing regulation. If any such dispute is not resolved through good faith negotiations, the United States may undertake further investigation or pursue further legal proceedings.

**B.    Duration and Court's Continuing Jurisdiction**

73.    This court will retain jurisdiction for three years from the date of entry of this Consent Decree to enforce or modify, or resolve any dispute that arises under, the terms thereof, after which time the above-captioned case will be dismissed with prejudice.

74.    The obligations in this Consent Decree will continue beyond this three-year period, except as otherwise noted herein. The exclusive jurisdiction and venue for any dispute relating to

this Consent Decree that arises more than three years from the date of entry thereof is the United States District Court for the Northern District of Illinois.

### C.    Modification

75.    There will be no modification of this Consent Decree without the written consent of the parties and the approval of the court, provided however, in the event of a change in the law, the ADA or its implementing regulation, either party may petition the court to modify the Consent Decree to comply with the then-existing law and the Consent Decree shall be so modified, provided however in such event all portions of the Consent Decree (as opposed to any one individual section) shall be modified to comply with the then-existing law.

76.    The time period for completion of all of the remediations discussed above shall be subject the United States' timely review of and response to plans and construction documents provided by the Cubs pursuant to the terms of this Consent Decree and to acts of God, *force majeure*, or events beyond the control of the Cubs such as delay in receipt of building permits, failure of the city/county inspectors to make inspections, contractor delays or defaults, work stoppages, material or labor shortages, inclement weather, or other unforeseen circumstances. In the event of such unforeseen circumstances and notwithstanding the Cubs' best effort to timely complete the modifications, the parties will confer in good faith regarding an appropriate extension of the deadline for such modifications based on the number of days reasonably attributable to such delay-causing event and jointly seek the court's approval of any mutually agreed upon extension. If the parties are unable to mutually agree upon an appropriate extension, the matter will be referred to the court.

77.     This Consent Decree represents the entire agreement between the parties and supersedes any prior agreements, oral representations, or statements made between the United States and the Cubs.

**D.      Non-Waiver and Reservation of Rights**

78.     Failure by the United States to seek enforcement of this Consent Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to enforcement with regard to other instances or provisions.

79.     Nothing in this Consent Decree shall be construed as a waiver of the right of the United States to seek relief against the Cubs under any statutes, regulations, or rules except as specifically noted herein.

80.     The United States does not waive and, to the contrary, expressly preserves the right to initiate additional compliance reviews or enforcement actions, including those relating to ADA compliance at Wrigley Field, except as set forth in section VIII.A above.

**E.      Compliance with Applicable Law**

81.     This Consent Decree does not relieve the Cubs of their obligation to comply with applicable law, whether federal, state, or local, including the ADA, except as set forth in this Consent Decree.

**F.      Costs and Attorney's Fees**

82.     Each party will bear its own costs and attorney's fees in this action.

**G.      Severability**

83.     If any provision of this Consent Decree is determined by any court of competent jurisdiction to be unenforceable, the other terms of this Consent Decree remain in full force and

effect, provided however that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and the Cubs will engage in good faith negotiations in order to adopt such mutually agreeable amendments to this Consent Decree as may be necessary to restore the parties as closely as possible to the initially agreed-upon relative rights and obligations between them. If the parties are unable to adopt such mutually agreeable amendments through good faith negotiations, the entire Consent Decree will be deemed null and void.

**H.    Effective Date**

84.    As used herein, "Effective Date" shall mean the date this Consent Decree is approved by the court.

ENTER:

_____
Judge Pacold
United States District Judge

Dated: 11/19/24

23

The parties stipulate to entry of the foregoing Consent Decree:

For the United States:

MORRIS PASQUAL
Acting United States Attorney

By:  s/ Abraham J. Souza
      PATRICK W. JOHNSON
      ABRAHAM J. SOUZA
      Assistant United States Attorneys
      219 South Dearborn Street
      Chicago, Illinois 60604
      (312) 353-5327
      (312) 353-1857
      patrick.johnson2@usdoj.gov
      abraham.souza@usdoj.gov

For Defendants:

s/ Mark R. Filip
MARK R. FILIP, P.C.
DONNA WELCH, P.C.
THERESA CEDEROTH HORAN
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
mark.filip@kirkland.com

TERESA L. JAKUBOWSKI (*Pro Hac Vice*)
Barnes & Thornburg LLP
555 12th Street, N.W., Suite 1200
Washington, D.C. 20004
(202) 371-6366
teresa.jakubowski@btlaw.com

JOHN F. KUENSTLER
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 338-5924
jkuenstler@btlaw.com